# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Aubrey Lyons,

        Plaintiff,        Case No. 16-14420

v.                              Judith E. Levy
                                United States District Judge

Michigan Department of
Corrections, Macomb Correctional    Mag. Judge David R. Grand
Facility, Warden Randall Haas,
Lieutenant Gary Kelly, Captain
Dale Holcomb, Lieutenant James
Webster, and Sergeant Robert
Loxton,

        Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [31]

This case arises from disciplinary actions taken against plaintiff Aubrey Lyons at the Macomb Correctional Facility ("Macomb"). Lyons, who is African American, alleges that he suffered race discrimination on the job. He brings Title VII claims, including disparate treatment, retaliation, and hostile work environment claims, and a Fourteenth Amendment Equal Protection claim against defendants Michigan

Department of Corrections ("MDOC"), Macomb, Warden Randall Haas, Lieutenant Gary Kelly, Captain Dale Holcomb, Lieutenant James Webster, and Sergeant Robert Loxton. (Dkt. 10.) Defendants' motion for summary judgment (Dkt. 31) is before the Court.

I. **Background**

Lyons began working for MDOC in 1997. (Dkt. 10 at 3.) In October 2012, he was transferred to Macomb. (*Id.* at 4.) Once there, he alleges that several incidents occurred based on his race and that he took actions to report that discrimination. (*Id.*)

**A. Computer Misuse Incident**

Between October 2012 and March 2014, Lyons downloaded Mozilla Firefox on approximately five computers at Macomb. (Dkt. 31-1 at 4.) On March 4, 2014, MDOC initiated an investigation into whether this violated MDOC's computer use policies. Lieutenant James Webster was assigned to investigate. (Dkt. 31-2 at 20.)

As a result, Lyons received a three-day suspension in September 2014 (Dkt. 31-2 at 1), which was later reduced to a one-day suspension. (Dkt. 31-4 at 1.) At that time, plaintiff told Webster that most staff commonly violated the computer usage policy, including Webster,

2

Lieutenant Gary Kelly, and Captain Dale Holcomb. (Dkt. 31-1 at 5–6.) On January 12, 2015, Lyons filed an internal discrimination complaint based on his belief "that Lt. Webster singled him out beginning in 2014 . . . and then discriminatorily conducted the investigation into Plaintiff's alleged work-rule violations." (Dkt. 34-5 at 8.)

**B. Gun Range Incident**

In May 2015, Lyons and thirteen other corrections officers ("COs") were required to attend a gun recertification. (Dkt. 31-5.) Lyons arrived at the gun range early one day during his designated recertification period with two other African American COs. (Dkt. 31-6 at 4.) Defendant Sergeant Robert Loxton, the weapons instructor, arrived shortly thereafter. (Dkt. 31-1 at 21.) Loxton told Lyons and the other COs that they needed to come back later to complete their training because the firearms trainers needed to be recertified first. (Dkt. 31-1 at 22–23.) Approximately thirty minutes later, Goodfellow, a Caucasian male, arrived at the range that morning and was permitted to recertify. (Dkt. 34-4 at 15.) Later that week, Lyons was recertified. (Dkt. 37-1 at 2.)

On July 20, 2015, Lyons filed an internal discrimination complaint about Loxton's conduct during this incident at the gun range. (Dkt. 31-

3

8.) A subsequent investigation determined "that Sgt. Loxton failed to give proper notice of when non-instructor staff needed to report to the range on the first day of recertification," but he had not engaged in discriminatory conduct at the gun range. (Dkt. 31-6 at 4.)

Lyons filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 8, 2015, based on the gun range incident. (Dkt. 31-9.) In the charge, Lyons indicated that he had filed an internal complaint with MDOC regarding the incident. (*Id.*) He received a right to sue letter. (Dkt. 31-10.) Lyons stated in his deposition that after he filed the EEOC charge, he was approached by other officers about the charge. (Dkt. 34-4 at 25.) Lyons was unable to explain how the other officers learned of his charge, but he stated that "it was kind of common knowledge" because some defendants were in the same social circle with the COs. (*Id.*)

### C. Guard Shack Incident

On December 18, 2015 at 2:53 a.m., Lyons was stationed in the prison yard in a guard shack. (Dkt. 31-11 at 9.) Defendants Holcomb and Kelly approached the shack during their rounds and noticed Lyons with his head down. (*Id.*) Kelly testified that he knocked on the window and

then saw Lyons open his eyes and look at him. (*Id.*) Lyons testified that he was not sleeping, but looking down at his radio, adjusting the time. (Dkt. 31-1 at 24–25.) He was written up for inattentiveness to duty. (*Id.* at 12.)

About thirty minutes after seeing Lyons with his head down, Holcomb and Kelly found CO Kurt Heinrich, a Caucasian male, who appeared to be sleeping. (Dkt. 31-14 at 1.) Heinrich was written up for inattentiveness to duty. (*Id.*) During the investigation into Heinrich's conduct, he admitted responsibility and was ultimately issued a written counseling. (*Id.*)

On May 18, 2016, Lyons was issued a one-day suspension by MDOC discipline coordinator Jennifer Nanasy for his inattentiveness to duty. (Dkt. 31-11 at 1; Dkt. 31-12 at 3.) After filing a grievance, the suspension was reduced to a written counseling in December 2016. (Dkt. 31-13.) It does not appear that Lyons filed a discriminatory harassment complaint about this incident.

On January 7, 2016, Lyons filed a supplemental document to his initial EEOC charge, titled "Retaliation Complaint." (Dkt. 34-11 at 2.) In it, he alleges that he is being retaliated against for filing internal

discrimination harassment complaints and the initial EEOC charge. (*Id.*) He also details the guard shack incident, notes that he is experiencing a hostile work environment, has been the victim of discrimination since 2012, and was the subject of three investigations in sixteen months (*id.*), which would have included the computer misuse incident.

### D. Other Disciplinary Events

Lyons' supervisory record captures several other disciplinary actions that involved plaintiff and the individual defendants while he was at Macomb. After the gun range incident, on June 24, 2015, Lyons received a formal counseling from Kelly for failing check a prisoner's leg restraints. (Dkt. 34-13 at 2). Kelly also gave him a verbal counseling for his facial hair on January 22, 2016 (Dkt. 34-14 at 2), which was after plaintiff filed the EEOC supplement, as well as the internal complaint against Loxton and the EEOC charge based on the gun range incident. And Holcomb verbally counseled him on August 23, 2016, about buttoning up his shirt. (*Id.*)

### E. Procedural History

Plaintiff raises Title VII, 42 U.S.C. § 2000e-2, and 42 U.S.C. § 1983 claims against defendants in his amended complaint. (Dkt. 10.)

6

Specifically, he raises disparate treatment, retaliation, and hostile work environment claims against MDOC under Title VII; Equal Protection claims against Haas, Holcomb, Kelly, Loxton, and Webster in their individual capacities under § 1983; and a variety of municipal liability claims against Haas for Equal Protection violations under § 1983.[1,2] (*Id.*) Defendants filed a motion for summary judgment (Dkt. 31), which plaintiff opposes. (Dkt. 34.)

A hearing on this motion was held on December 17, 2018. At that time, the Court granted defendants' motion for the reasons set forth on the record, which explained that plaintiff did not show that there was a comparator for his disparate treatment claim, that the alleged race discrimination was serious or pervasive and that MDOC knew or should have known about the hostile environment for his hostile work

---

[1] Although plaintiff states he is suing Haas in his individual capacity, the Court assumes he means official capacity since the last claim is for municipal liability. *See Winkler v. Madison Cty.*, 893 F.3d 877, 901 (6th Cir. 2018).

[2] The parties stipulated to the dismissal of several claims: substantive due process violations under the Fourth and Fourteenth Amendments, free speech violations under the First and Fourth Amendments, gross negligence, and a request for injunctive relief. (Dkt. 30.) The parties also stipulated to the partial dismissal of the municipal liability claims against MDOC and Macomb. (Dkt. 11.) Although plaintiff did not name Macomb in the municipal liability claim, the parties seem to generally agree to dismiss all but Haas from this claim.

7

environment claim, and that there were comparators for his Equal Protection claims.[3] Therefore, those claims were dismissed. Only the retaliation claim against MDOC remains.[4]

II. **Legal Standard**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

---

[3] Additionally, plaintiff did not respond to defendants' summary judgment motion on his municipal liability claim against Haas. Therefore, plaintiff abandoned that claim, and the Court need not consider it further. *See Clark v. City of Dublin*, 178 F. App'x 522, 525 (6th Cir. 2006).

[4] On January 18, 2019, the parties submitted a joint status report, indicating that negotiations as to this claim were ongoing. (Dkt. 38 at 2.) To date, the parties have not updated the Court on their progress, and so this order must issue.

8

### III. Analysis

Title VII prohibits retaliation for reporting discrimination. § 2000e-3. If a plaintiff cannot show direct evidence of retaliation, he may show indirect evidence of retaliation under the *McDonnell Douglas* burden-shifting framework. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (citing *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003); *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491–92 (6th Cir. 2010)). First, plaintiff must establish a prima facie retaliation claim that: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) [ ] the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007)). Then, the burden shifts to the defendant "to proffer some legitimate, nonretaliatory reasons for its actions." *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015) (citing *Cantina v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990)). If the defendant articulates such a reason, the burden shifts back to plaintiff to show it was pretext.

*Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 777 (6th Cir. 2018) (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007)). For the reasons set forth below, plaintiff cannot establish a prima facie case of retaliation in response to defendants' motion, ultimately faltering at the knowledge element.

### A. Protected Activity

Plaintiff engaged in protected activities. Filing internal complaints and EEOC complaints are activities protected by Title VII. *Laster*, 746 F.3d at 730. Therefore, plaintiff's internal discrimination complaint against Webster for the computer misuse incident, internal complaint against Loxton for the gun range incident, EEOC complaint based on the gun range incident, and EEOC supplement noting retaliation are all protected activities.

### B. Materially Adverse Action

In the retaliation context, the "plaintiff's burden of establishing a materially adverse employment action is less onerous . . . than in the anti-discrimination context. A materially adverse employment action in the retaliation context consists of any action that 'well might have dissuaded a reasonable worker from making or supporting a charge of

discrimination.'" *Michael*, 496 F.3d at 596 (citations omitted). For example, even the failure to extend an invitation to an employee for lunch could constitute a materially adverse action in a certain context, such as career advancement. *Laster*, 746 F.3d at 732 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 82 (2006)). But Title VII does not protect against "all retaliation, only from retaliation that produced injury or harm." *Taylor*, 703 F.3d at 336 (quoting *Burlington*, 548 U.S. at 67).

Reprimands that would normally be nonmaterial may amount to materially adverse actions when "related to a larger pattern of intimidation by constantly reprimanding [the plaintiff]." *Id.* at 338. For example, selective enforcement of policies and harsher punishment for the plaintiff compared to coworkers, denial of training opportunities, and a frivolous investigation were materially adverse actions. *Laster*, 746 F.3d at 732. And in *Ford v. General Motors Corp.*, an increased workload, increased scrutiny of behavior compared to coworkers, and a constructive discharge were materially adverse actions. 305 F.3d 545, 554–54 (6th Cir. 2002). But verbal warnings are generally insufficient. *Finley v. City of Trotwood*, 503 F. App'x 449, 454 (6th Cir. 2012).

Plaintiff offers the following possible materially adverse actions taken by defendants[5]: the gun incident with Loxton on May 5, 2015; Kelly's formal counseling because plaintiff did not check the leg restraints of a prisoner on June 24, 2015; Kelly and Holcomb writing up plaintiff for inattentiveness to duty in the guard shack on December 18, 2015; Kelly's verbal counseling for plaintiff's facial hair on January 22, 2016; a one-day suspension for the guard shack incident issued by Nanasy on May 18, 2016; and Holcomb's verbal counseling for plaintiff's shirt being unbuttoned on August 23, 2016.[6] It appears to be undisputed that the one-day suspension is a materially adverse action (*see* Dkt. 31 at 28), but all others seem to be disputed.

None of these actions are materially adverse, even under the permissive standard in the retaliation context. Plaintiff has not shown how he was injured by any of these actions. As to the gun range, plaintiff

---

[5] Only the actions taken by defendants are considered here, despite other disciplinary actions taken against plaintiff at Macomb, because those who take such actions must have knowledge of the protected activity to create the inference of retaliation, and plaintiff only addresses the knowledge of Holcomb, Kelly, Loxton, and Webster. *See Hicks v. SSP America, Inc.*, 490 F. App'x 781, 785 (6th Cir. 2012) (quoting *Mulhall v. Ashcroft*, 287 F.3d 543, 553 (6th Cir. 2002)); *see also* Section III.C.

[6] Plaintiff characterizes the verbal counselings as a formal counseling (Dkt. 34 at 27), but the record does not show it was formal. (Dkt. 34-13 at 2; Dkt. 34-14 at 2.)

was not injured because he received his training a week later, unlike what happened to the plaintiff in *Laster*. Plaintiff does not indicate what effect the formal counseling had, if any. Without any context, there is no way to tell if plaintiff was harmed by it. Similarly, plaintiff has not shown what injury he suffered from the write-up for his inattentiveness to duty from Holcomb and Kelly. The one-day suspension came from Nanasy, but Holcomb and Kelly did not mete out the suspension, and so the focus must be on the effect of the write-up itself.[7] Again, plaintiff points to nothing in the record to support a finding that the write-up injured him. And finally, verbal warnings are not materially adverse consequences under *Finley*.

---

[7] Even if the write-up were a materially adverse action and the Court found that plaintiff had shown Holcomb and Kelly knew of plaintiff's protected activity, plaintiff could not show causation. Temporal proximity alone is not enough to show proximate cause; it must be "coupled with other indicia of retaliatory conduct." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006) (citing cases). A comparator may be such indicium, *see Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 413 (6th Cir. 1999), as is increased scrutiny, *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435–36 (6th Cir. 2009). Assuming the December 2015 write-up is temporally close to the October 2015 EEOC charge, plaintiff still fails to show any other retaliatory indicia. The record shows that Heinrich was also written up for inattentiveness to duty that evening, and plaintiff makes no showing of comparators regarding the verbal counselings. Moreover, plaintiff's showing does not reflect increased scrutiny regarding the guard shack complaint. After the guard shack incident, he experienced two disciplinary actions from defendants—one in January 2016, but the next is not until eight months later. Without more context, it is difficult to tell if this is increased scrutiny in retaliation for the EEOC charge or supplement because it appears that plaintiff struggled with discipline since he transferred to Macomb. (*See* Dkt. 34-14 at 3.)

Even considering these incidents together, plaintiff does not show a pattern of intimidation through constant reprimanding or that taken together would indicate these actions were materially adverse. Over the course of twenty months, plaintiff was on the receiving end of the individual defendants' conduct six times, including the issuance of the one-day suspension. He has not shown that there is an environment of constant reprimanding. *See Taylor*, 703 F.3d at 338. Nor has plaintiff provided any context that any of the polices he violated, such as the leg restraint, facial hair, or dress policies, were selectively and more harshly enforced against him as the plaintiff did in *Laster*. Relatedly, unlike *Ford*, he has also not shown that he was under increased scrutiny compared to his coworkers. In sum, there is no indication that these events would have reasonably dissuaded a worker from making complaints about discrimination, and so the only materially adverse action is the one-day suspension.

### C. Knowledge by Defendants

To satisfy the knowledge element of a prima facie retaliation case, plaintiff must show "that the relevant decision makers knew of any alleged protected activity when they took adverse action." *New Breed*

*Logistics*, 784 F.3d at 1068–69. "[K]nowledge of a plaintiff's activity can be inferred from evidence of the prior interaction of individuals with such knowledge and those taking the adverse employment action." *Hicks*, 490 F. App'x at 785 (quoting *Mulhall*, 287 F.3d at 553). The only instance of a materially adverse action is the one-day suspension, and so the question is whether Nanasy knew of plaintiff's protected activities when she issued it.

Plaintiff fails to show that Nanasy knew about any of his protected conduct. He offers no evidence to rebut defendants' showing that she was not aware of his internal complaints or EEOC charges. (Dkt. 34-9 at 19.) Instead, plaintiff mistakenly focuses on the knowledge that Loxton, Kelly, Holcomb, and Webster had of his protected activities by looking at their shared social networks. (Dkt. 34 at 24–26). However, the question is whether Nanasy, the relevant decision-maker, knew about these protected activities. Even crediting plaintiff's argument that the other defendants knew of the activities based on their social relationships, he makes no showing that she was in contact with these other defendants such that the Court could infer she also knew about the activities as

*Hicks* permits. Therefore, plaintiff has not shown that Nanasy knew he had engaged in protected activity.

## IV. Conclusion

For the reasons set forth on the record at the hearing on December 17, 2018, plaintiff fails to show there is a genuine issue of material fact as to his claims for disparate treatment, hostile work environment, and equal protection. Furthermore, for the reasons set forth above, plaintiff also fails to meet his burden on summary judgment for his last remaining claim, retaliation.

Accordingly, defendants' motion for summary judgment (Dkt. 31) is **GRANTED**.

IT IS SO ORDERED.

Dated: March 1, 2019　　　　　　　s/Judith E. Levy
　　Ann Arbor, Michigan　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 1, 2019.

　　　　　　　　　　　　　　　　s/Shawna Burns
　　　　　　　　　　　　　　　　SHAWNA BURNS
　　　　　　　　　　　　　　　　Case Manager